ALBANY,
Nov. 1833.

Craig
v.
Supervisors of
Orange.

Ex parte H. CRAIG *vs.* SUPERVISORS OF ORANGE.

An assessment of damages, on the laying out of a *private road*, is not subject to the revision or correction of a board of supervisors.

H. G. WISNER asked for a *mandamus* directing the supervi- November 21. sors of the county of Orange to examine into the principles on which an assessment of damages had been made in the laying out of a *private road*, the supervisors having refused to act in the matter. He contended that as the statute directed that the damages in the case of a private road should be ascertained or assessed *in like manner* as if the same was a public highway, 1 *R. S.* 517, § 78 ; and as in the case of a public highway the supervisors have power to examine into the principles on which an assessment is made, and into the fairness and justice thereof, and to increase or reduce the damages, 1 *R. S.* 515, § 69, so, he contended, they had the like power in the case of a private road ; that it was as necessary in the one case as in the other, to the ends of justice, that this right of appeal should exist ; and that the adjudication of the supervisors was as much a part of the mode or *manner* in which the damages should be assessed, as the finding of the jury in the first instance.

*S. J. Wilkin* insisted that an assessment of damages in the case of the laying out of a *private road* was not subject to the revision or correction of the supervisors. The power is not given by the express words of the statute, nor is it within its meaning, or the policy of the law. Why should a determination of this kind, affecting individuals only, be submitted to the revision of a board of supervisors ?

*By the Court,* SAVAGE, Ch. J. The question in this case is whether the damages assessed by the jury, on opening a *private road*, are subject to the revision and correction of the board of supervisors ?

A review of our statutory provisions previous to the late revision, may aid us in the decision of this point. By the laws of 1813, and previous thereto, damages were to be assessed, on laying out a *public road*, by two justices and a jury, or by commissioners to be appointed for that purpose, and the damages assessed by the jury and the expenses attending the assessment were presented to the board of supervisors of the county, whose duty it was to cause the same to be raised, levied and collected, in the *town* in which the road was laid out, in the same manner as other town charges. 2 *R. L.* 275, § 16. In the case of *private roads*, the damages were assessed in the same manner, and paid by the person applying. There was no tribunal in either case to review the assessment and alter the amount. The only object in laying the subject before the supervisors, in case of public roads, was, that the amount might be assessed, collected and paid by the taxable inhabitants of the town. The supervisors had nothing to do but to add the amount to the assessment upon the town and order it collected. In some instances, the supervisors assumed the power of altering the amount, and the question was brought before this court, and we decided that the supervisors had nothing to do with the merits of the appraisal, and were only to collect the amount of the appraisement. 5 *Cowen*, 292. This was in February, 1826. The legislature then in session conceiving that such a power in the board of supervisors might be a statutory one, enacted, on the 14th April following, that in cases of assessment of damages, by the 16th section of the act of 1813, (which related to public highways only,) the supervisors should examine into the principles upon which the appraisal was made, and the fairness and justice of the appraisement, and to reduce or increase such appraisement as should be just. This was the commencement of the power in the board of supervisors, and was in terms confined to cases under the 16th section of the former act, which related to *public roads*, and those alone. The damages in cases of private roads had never been laid before them ; those were to be paid by the person for whose benefit the road was laid out, and if not paid, an action would no doubt lie.

The revised statutes, like the previous statutes, provide first for the laying out of public roads, and for the assessment of damages in such a case. The 69th section, 1 *R. S.* 515, directs the commissioners to cause a copy of the verdict, with a statement of the charges and expenses, to be laid before the board of supervisors, and states that the board shall have power to examine into the principles on which the assessment was made, and into its fairness and justice, and to increase or reduce the amount as in their judgment shall be just. This section is a transcript of the act of 1826 on the same subject, and in terms is applicable to public roads. The 78th section declares that the damages of the owner of land through which a *private road* shall be laid out, "shall be ascertained or assessed in like manner as if the same was a public highway, and such damages shall be paid by the person applying for the road." This I understand to be a mere re-enactment of former provisions, not the introduction of any thing new ; and therefore the supervisors have no power to review an assessment of damages, upon laying out a private road. It is only the *assessment* which is to be made in like manner as in case of a public highway, but there the similarity stops. The assessment in one case goes to the supervisors ; in the other it does not. In one case the town pays the damages ; in the other, the person benefitted. The supervisors are invested with authority only in cases where the public are interested, but not to settle rights between individuals.

Motion denied.